UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TIFFANY B., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 2:22-cv-00102-LEW |
| ) | |
| KILO KIJAKAZI, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant ) | |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the March 1, 2021, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2).[1] The ALJ's decision tracks

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of obesity, gout, and adjustment disorder with mixed anxiety and depressed mood. (R. 14.) The ALJ further found that Plaintiff has the residual functional capacity (RFC) to perform work at the light exertional level, except she can occasionally bend, balance, twist, squat, kneel, crawl, and climb; must never climb ladders, ropes, or scaffolds; must avoid hazards such as heights, vibration and dangerous machinery, including driving; must not operate left or right foot controls; requires a cane to walk/ambulate only; and can tolerate occasional interaction with coworkers, supervisors, and the public. (R. 17.)

Based on the RFC finding, Plaintiff's age, education and work experience, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity existing in the national economy, including the representative occupations of toll collector, checker, and garment sorter. (R. 27-28.) The ALJ determined, therefore, that Plaintiff was not disabled. (R. 28.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind

might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues the ALJ erred in his assessment of Plaintiff's RFC, in his conclusion that Listing 14.09 was not satisfied, and in his failure to address post-hearing evidence regarding the number of jobs available in the national economy.

**A.     Plaintiff's RFC**

Plaintiff contends the ALJ's RFC finding is not supportable because (a) the ALJ relied in part on the opinion of a state agency medical consultant who reviewed an incomplete record and (b) the ALJ exceeded his competence as a layperson by interpreting raw medical data.

Plaintiff's rheumatologist, Edward Fels, M.D., ordered x-rays of Plaintiff's feet on October 2, 2020, and described the results as follows:

> There are 1st MTP degenerative changes with possible erosion on the right. There are moderate to severe degenerative changes in the right midfoot particularly localizing to the cuboid. There is questionable erosive change at the base of the 5th metatarsal on the right. There are likely cystic erosions in the right cuboid. A calcaneal erosion is evident on lateral view of the right foot at the inferior aspect. Dorsal midfoot osteophytes [bone spurs] are present on the left foot. Findings are consistent with known gouty arthritis with secondary degenerative and erosive changes. (R. 1909.)

Dr. Fels also ordered CT (computerized tomography) scans of Plaintiff's feet,

which were performed on October 27, 2020. (R. 2018.) Steven Winn, M.D., reviewed the results and found no tophaceous gout in either foot, but osseous changes in both feet. (*Id.*) He observed, "[i]n the left foot these [changes] appear to be predominately degenerative, although there may be old healed fracture deformity of the anterior process of the calcaneus [heel bone][; i]n the right foot, the appearance suggests that there may have been prior multifocal osteonecrosis [death of bone tissue]." (*Id.*) Dr. Winn described the findings in further detail:

> RIGHT FOOT: There is multifocal bone abnormality with mixed sclerosis [abnormal hardening and density] and lucency [lesions]. This is most severe in the proximal dorsal cuboid bone, at the calcaneal cuboid articulation, where there is bone fragmentation. There is soft tissue swelling overlying this area at the dorsal lateral aspect of the foot. Similar bone changes are next most severe in the navicular bone, particularly at the level of articulation with the lateral cuneiform and adjacent to the cuboid and anterior process of the calcaneus. Less severe changes are seen in the lateral, middle and middle cuneiform.
>
> LEFT FOOT: There are osteoarthritic changes in tibiotalar joint, with joint space narrowing and marginal osteophytes. Degenerative changes are also seen at the level of the distal tip of the lateral malleus and the distal tibiofibular syndesmosis. There is degenerative change seen also at the posterior facet of the subtalar joint, with marginal osteophytes and some joint space narrowing. There is contour abnormality of the anterior process of the calcaneus and I question if there is a post fracture deformity, with a displaced healed round fracture fragment … and a small additional nonunion fracture fragment.

(*Id.*) Archibald Green, D.O., the state agency medical consultant upon whose March 2020 opinion the ALJ relied in large part in determining Plaintiff's RFC,[2] did not have

---

[2] The ALJ also found the opinions of consultative examiners Kelleryn Wood, ANP, and Fred Fridman, D.O., and that of Brian Haney, D.O., to be "of some persuasiveness." (R. 24-25.) The ALJ partially discounted the opinion of ANP Wood and Dr. Fridman regarding specific limitations for sitting, standing, walking, and handling and fingering, because the opinion was based on a one-time examination, appeared to be based primarily on Plaintiff's subjective reporting, was inconsistent with other evidence of record,

4

available the October 2020 x-rays or CT scans. (*See* R. 23, 96-97.) Dr. Green did review a November 2018 MRI of Plaintiff's right foot.

The ALJ summarized the October 2020 imaging by noting the bilateral feet x-rays showed "first MTP degenerative change with possible erosion on the right. [Plaintiff] had moderate to severe degenerative changes in the right midfoot particularly localizing to the cuboid," with "questionable erosive change at the base of the fifth metatarsal on the right," and "calcaneal erosion" evident "on the lateral view … at the inferior aspect." (R. 21.) On the left foot, the ALJ noted that dorsal "midfoot osteophytes were present." (*Id.*) The ALJ repeated Dr. Fels observation that the overall "findings were consistent with gouty arthritis with secondary degenerative and erosive changes." (*Id.*)

The ALJ described Plaintiff's October 2020 CT scan as revealing "no findings for tophaceous gout in either foot. There were osseous changes in each foot. Her left foot osseous changes appeared to be predominately degenerative," while Plaintiff's "right foot appearance suggest[ed] there were prior multifactorial osteonecrosis." (R. 21.)

Plaintiff argues the ALJ could not supportably rely on the opinion of the state agency consultant (Dr. Green) because the consultant did not review the October 2020 imaging results. "[A] DDS non-examining expert's report cannot stand as substantial evidence in support of an administrative law judge's decision when material new

---

and did not involve the benefit of a review of Plaintiff's longitudinal medical record. (R. 24.) The ALJ also discounted their opinion that Plaintiff could occasionally climb ladders, ropes, or scaffolds because "they did not fully consider how" her gout-related symptoms would affect her abilities. (R. 25.) The ALJ found Dr. Haney's opinion was generally supported by his treatment records and consistent with other record evidence, but the ALJ noted Dr. Haney did not address Plaintiff's need for a cane to ambulate. (R. 25.) Neither ANP Wood and Dr. Fridman, nor Dr. Haney, reviewed Plaintiff's October 2020 imaging results.

evidence has been submitted [that] call[s] the expert's conclusions into question." *Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008). An ALJ may, however, rely on experts' reports despite later-submitted evidence when the new evidence "does not call into question [the experts'] conclusions." *Emily A. v. Saul*, No. 2:19-cv-00071-JDL, 2020 WL 2488576, at *7 (D. Me. May 14, 2020). Plaintiff maintains that the October 2020 imaging is a "'clear example of 'raw medical data' that is not within 'the bounds of a lay-person's competence[,]'" and thus should be assessed by a medical expert in order to determine its functional importance and whether it materially changed the record." (Opposition at 10, ECF No. 11 (quoting *Curtis v. Kijakazi*, No. 20-cv-1140-JL, 2022 WL 994500, at *5 (D. N. H. Mar. 29, 2022) (quoting *Byron v. Saul*, No. 18-CV-684-PB, 2019 WL 3817401, at *6 (D.N.H. Aug. 14, 2019)).

Although Plaintiff contends the ALJ improperly interpreted raw medical data (the October 2020 imaging), Plaintiff has offered no expert opinion or other pertinent medical evidence to support her contention that the imaging represents a material change that calls into question the conclusions of the agency consultant. The imaging was conducted after all the medical experts issued their opinions. Where a claimant argues that more recent radiographic studies raise questions about an expert's opinion, the significance of the studies is typically demonstrated by other evidence and remand is not based simply on the ALJ's lay assessment of the studies. For instance, in *Donald M. v. Saul*, No. 2:20-cv-00364-JDL, 2021 WL 2589179, at *3 (D. Me. June 24, 2021) (*aff'd* July 29, 2021), the Court cited a subsequent x-ray and medical findings by an expert after the x-ray when the Court found the ALJ improperly interpreted raw medical data. Even in *Curtis*, the

6

District of New Hampshire case upon which Plaintiff relies, in ordering remand, the Court, after noting the differences in the imaging studies, observed that the potential significance of a subsequent x-ray was supported by the medical records of treating providers, which records reflected the plaintiff's symptoms could be worsening. *Curtis*, 2022 WL 994500, at *6.

Such an approach is sound. Without contemporaneous or subsequent evidence that demonstrates the potential significance of a radiographic study, an ALJ would be unable to conclude that the study represented a material change that questioned an expert's report without interpreting raw medical data (i.e., radiographic study). Furthermore, an imaging study alone does not ordinarily suggest a particular functional limitation. This is consistent with the proposition that a diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *See Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014).

In this case, the record generated after the state agency consultant issued his opinion does not reflect a material change that would call into question the consultant's opinion regarding Plaintiff's functional limitations. To the extent Plaintiff contends the imaging reflects a worsening of Plaintiff's condition, the record lacks sufficient evidence of a corresponding change in Plaintiff's symptoms, treatment, or functional limitation. Accordingly, the ALJ did not err in the RFC assessment.[3]

---

[3] Plaintiff also argues the ALJ erred in not including any limitations with respect to her alleged left hand impairment. Plaintiff cites to the March 5, 2020, opinion of consultative examiners ANP Wood and Dr.

**C.      Listing 14.09**

Plaintiff contends the ALJ erred in concluding she did not satisfy Listing 14.09, Inflammatory Arthritis. At step 3 of the sequential evaluation process, the Commissioner considers whether a claimant's impairments meet or equal the criteria set forth in the "listings" found in appendix 1 of the disability regulations. 20 C.F.R. § 404.1520(a)(iii), 416.920(a)(iii). If so, the claimant is deemed disabled without any further analysis of the claimant's residual functional capacity to perform past relevant work or other work in the national economy. *Id.* §§ 404.1520(d), 416.920(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) ("The listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity."); 20 C.F.R. §§ 404.1525(a), 416.925(a) (same). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Pursuant to § 14.09(A)(1)(a)-(b) & (B), Plaintiff must show

A. Persistent inflammation or persistent deformity of:

1.   One or more major joints in a lower extremity … and medical documentation of at least one of the following:

a. A documented medical need … for a walker, bilateral canes, or bilateral

---

Fridman, who reported tenderness and mild swelling in Plaintiff's left thumb joints, attributed to gout, and her avoiding the use of her left thumb in grasping. (R. 1627, 1629.) ANP Wood and Dr. Fridman opined that Plaintiff could only occasionally handle and finger with her left hand. (R. 1628, 1629.) The ALJ discounted this opinion, noting that Plaintiff's allegations of gout-related limitations in her left hand were unsupported by objective findings elsewhere in the record, citing earlier medical records that showed "no shoulder, elbow or hand abnormalities, normal upper extremity strength, and normal ranges of joint motion." (R. 22, citing R. 626, 631, 1565, 1627, 1908.) The ALJ also noted that at the consultative examination, Plaintiff exhibited "normal fine dexterous movements and the ability to handle light objects." (R. 22, citing R. 1628.) The ALJ's determination is supportable.

  crutches … or a wheeled and seated mobility device involving the use of both hands; or

  b. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements … and a documented medical need … for a one-handed, hand-held assistive device … that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or

  \*\*\*

  B. Inflammation or deformity in one or more major joints of a … lower extremity with:

  1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and

  2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

*Id*. (citations omitted). Plaintiff argues the ALJ erred in concluding that there "is no evidence of … persistent deformity of one or more major peripheral weight-bearing joints resulting in an inability to ambulate," pointing to the evidence that Plaintiff needs a cane for ambulation (and, indeed, the RFC so provides) as well as the October 2020 imaging. (*See* R. 15.)

  Even if Plaintiff could demonstrate that she has a persistent deformity in both her feet/ankles, Plaintiff has not produced evidence that she was "prescribed a walker or wheelchair," as the ALJ observed, or bilateral canes or crutches. (R. 21.) Further, as noted above, the ALJ supportably rejected Plaintiff's claimed limitation in the use of her left hand, and Plaintiff does not identify evidence of the involvement of two or more organs/body systems or constitutional symptoms or signs. Moreover, there is evidence that Plaintiff did not consistently use her cane. (*See, e.g.*, R. 1627.) Plaintiff, therefore,

9

has not met her burden at step 3.

**B.     Job Numbers**

At the hearing, a vocational expert (VE) testified that Plaintiff could perform the representative jobs of toll collector, Dictionary of Occupational Titles (DOT) 211.462-038, with 36,260 such jobs in the national economy; checker, DOT 222.687-010, with 12,265 jobs; and garment sorter, DOT 222.687-014, with 1,213 jobs. (R. 79-82.) The VE further testified that he obtained the job numbers for these positions using the Job Browser Pro software program, version 1.7, and that he had not adjusted the numbers provided by the software. (R. 83.)

After the hearing, Plaintiff submitted an affidavit from David Meuse, M.S., C.R.C. (R. 368-73.) Using the same version of Job Browser Pro and filtering for results of only full-time jobs, Mr. Meuse obtained the following job numbers: toll collector, 6,964 jobs; checker, 4,031; and garment sorter, 188 jobs. (R. 369.) Together, the total number of full-time jobs Mr. Meuse alleges he obtained from Job Browser Pro is 11,183. (*Id.*)

Plaintiff argues that because none of the jobs individually has 10,000 to 11,000 positions, Defendant has not established that the jobs Plaintiff can perform exist in the national economy in significant numbers. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1), 416.925(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 7 (1st Cir. 1982). This Court has determined that numbers of jobs "in the ballpark of 10,000 to 11,000 nationwide" are "significant … for purposes of step 5 analysis," *Vining v. Astrue*, 720 F. Supp. 2d 126, 137 (D. Me. 2010)

In *Terra H. v. Kijakazi*, No. 2:21-cv-00301-GZS, 2022 WL 418178 (D. Me. Sept.

10

13, 2022), the plaintiff argued the Commissioner could not rely on unchallenged aggregate jobs numbers, which totaled 9,700, because *Vining* requires each position relied upon by an ALJ to meet the Commissioner's step 5 burden must satisfy the 10,000 to 11,000 benchmark. *Id*. at *3. The Court rejected the plaintiff's argument, noting that *Vining* does not stand for the proposition that each job must meet the threshold. *Id*. at *4. Such a reading would be inconsistent with the Social Security regulations, which provide that work "exists in the national economy when there is a significant number of jobs (*in one or more* occupations) having requirements [a claimant is] able to meet …." 20 C.F.R. §§ 404.1566(b), 416.966(b) (emphasis added); *see also Terra H*., 2022 WL 418178 at *4. As further noted in *Terra H.,* Plaintiff's position "is contrary to the weight of authority on this issue." *Id*. (collecting cases, including, *e.g*., *Brownell v. Berryhill*, No. 17-11462-FDS, 2018 WL 3150222, at *14 (D. Mass. June 27, 2018) ("because the purpose of [step 5 is to determine] whether a claimant could find work of any kind, there is no reason to require that there be a sufficient number of jobs in any one type of job.").

The reasoning in *Terra H*. and the cases cited therein is sound. The ALJ did not err. Remand is not required.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by

11

the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of February, 2023.